## WRIGHT v. BRAGG.

(Circuit Court of Appeals, Seventh Circuit. October 3, 1899.)

### No. 574.

1. TRIAL TO COURT—FINDINGS.

In an action at law tried to the court without a jury on a written stipulation of the parties, a circuit court may make either special findings or a general finding, but cannot make both; and, where special findings are made, one stating a conclusion of law on the general issue is not to be regarded as a general finding.

2. REVIEW ON APPEAL—ACTION TRIED TO COURT.

The only recognized exception to the statutory rule (Rev. St. § 700) that when the court, on the trial of an action at law without a jury, by stipulation, makes a special finding, a review is limited to rulings of the court in the progress of the trial, and of the sufficiency of the findings to support the judgment, is that a party may insist on a finding in his favor on the ground that there is a total lack of evidence to support a contrary finding, or, if he have the burden of the issue, on the ground that the evidence in his favor is adequate, unimpeached, and without conflict or uncertainty; and, when a motion on such ground is made before the finding is made or entered of record, an adverse ruling thereon, if proper exception is saved, may be reviewed.

3. EXAMINATION OF WITNESS—IMPEACHING TESTIMONY—RIGHT OF ·COUNSEL TO INSPECT LETTER.

Where a witness on cross-examination is asked if he did not write a statement shown him, contained in a letter, which standing alone is inconsistent with his testimony in chief, and admits having written it, it is the privilege of counsel introducing the witness to inspect the entire letter for other statements which may explain or qualify the expression admitted; and the denial of such inspection, where the testimony of the witness is material, is prejudicial error.

In Error to the Circuit Court of the United States for the Eastern District of Wisconsin.

Denis F. Cash, for plaintiff in error.

Edward S. Bragg, for defendant in error.

Before WOODS and JENKINS, Circuit Judges.

WOODS, Circuit Judge. The declaration in this case is in trover for the recovery of possession of a note and mortgage. The action was brought by James H. Farnsworth against Phinelan B. Haber, but on the defendant's motion, and showing that he had possession only as executor of the last will of Eliza O. Farnsworth, the payee of the note and mortgage, and that Ella Wright claimed to be the devisee and owner thereof under the will, the latter was substituted as defendant in the case, appeared and answered, and joined the plaintiff in a written stipulation for the trial of the case by the court without a jury. On suggestion of the death of James H. Farnsworth and of the appointment of Edward S. Bragg as administrator, the name of the latter as defendant in error has been substituted.

The court made the following special finding of facts, and gave judgment thereon for the plaintiff:

"(1) That one Eliza O. Farnsworth, then being the owner and in possession of the note and mortgage described in the declaration, made and delivered to her to secure the principal sum of five thousand ($5,000) dollars, with interest at five per cent., by one A. Ver Bryck, dated October 30, 1894, and recorded in the office of the register of deeds in Fond du Lac county, in the state of Wisconsin, on November 21, 1894, did on the 17th day of November, 1894, make and execute before and in the presence of two attesting witnesses, who subscribed their names thereto as such, an assignment in writing, under her hand and seal, to James H. Farnsworth, the plaintiff, of said note and mortgage, which said assignment was in the usual form, without condition, reservation, or limitation, reciting the sum of five thousand ($5,000) dollars as a consideration therefor, and acknowledged the receipt thereof, which assignment was also properly acknowledged for record, and thereafter, on the same day, delivered the same to James T. Greene, to be held for said plaintiff. (2) That said James T. Greene, the depositary, was at the time of said delivery to him acting in some matters as the agent for Mrs. Eliza O. Farnsworth, and continued to act for her in such matters up to the time of her death, but during all such time kept the said note and mortgage and assignment separate and distinct from the papers of said Eliza O. Farnsworth in his possession, and not commingled or tied up in bundles or packages with them, but in an envelope separate and distinct by itself. (3) That James T. Greene, upon the presentation to him by one P. B. Haber, who was the original defendant in this action, on the 18th day of November, 1895, after the death of Mrs. Eliza O. Farnsworth, of the order hereinafter recited, delivered the said note and mortgage to him, but refused to surrender or give up the assignment of said note and mortgage, though requested so to do, and afterwards, on the 25th day of June, 1896, caused the same to be recorded in the office of the register of deeds in said county of Fond du Lac. (4) That Mrs. Eliza O. Farnsworth

died on the 15th day of November, 1895, and James T. Greene died some time in 1897, after the recording of said assignment, which paper, with the official indorsement of its record thereon, came to the hands of the plaintiff from the representatives of Greene's estate. (5) That defendant offered in evidence the following proof: That on the 10th day of November, 1895, Mrs. Eliza O. Farnsworth gave an order in writing, signed by her and addressed to Mr. Greene, as follows: 'Please deliver to Mr. P. B. Haber the five thousand dollar note of Mr. A. Ver Bryck and a note of Mr. Tretlow, as well as any and all papers and securities you may hold in your possession belonging to me, moneys included.' And also that on the same day she, in her last sickness, from which she died on the 15th of November following, made a last will and testament, which had been duly probated, containing in it a purported bequest of the note and mortgage in controversy, in words and figures following: 'I give and bequeath to my beloved niece, Ella Wright, of Cincinnati, Ohio, five thousand dollars ($5,000), the same being in one promissory note executed by Mr. A. Ver Bryck, and secured by a real-estate mortgage; said note being now in the possession of James T. Greene, of the city of Fond du Lac, Wisconsin, to whom the same was given at the time of my departure for the South in the year 1894. Any indorsements or assignments of said note are hereby canceled and revoked.' Each and both of which recitals were received by the court qualifiedly, but neither of them was admitted as evidence to explain or vary the transaction of the assignment. (6) The following indorsement in the handwriting of James T. Greene upon the envelope in which the said note, mortgage, and assignment were kept by said Greene was given in evidence by the defendant: 'Nov. 17, 1894. Eliza O. Farnsworth. Left with James T. Greene. In case of death, to be delivered to James H. Farnsworth or his heirs.' And also an indorsement on the note in the handwriting of said James T. Greene: 'Paid interest to Oct. 30, 1895, two hundred and fifty dollars ($250). Oct. 22, 1895. Eliza O. Farnsworth, per J. T. Greene.' (7) The note and mortgage described in the complaint, with $500 interest paid thereon, has been deposited with the court, and is now in its possession, subject to its order, and there is due upon it on the 30th day of October, 1898, $250 additional interest; and the value of the same is the principal amount stated in said note and mortgage, with the interest paid and due thereon as aforesaid. (8) That the plaintiff is the owner and entitled to the possession of said note and mortgage and interest paid thereon and secured thereby as aforesaid, and is entitled to a formal judgment for damages against the defendant, by reason of the technical conversion of the same by said defendant, for the value of the note and mortgage and interest paid thereon, and now in the custody of the court, and since accrued thereon, with interest at five per cent., and also for his taxable costs and disbursements in addition thereto; the defendant having admitted possession, demand, and value, as stated in the complaint."

The last clause was probably intended to be a statement of legal conclusion only. It should have been so expressed. U. S. v. Harris, 46 U. S. App. 653, 23 C. C. A. 483, and 77 Fed. 821. It is not to be regarded as a general finding upon the issues of the case. A finding may be either general or special, but not both. British Queen Min. Co. v. Baker Silver Min. Co., 139 U. S. 222, 11 Sup. Ct. 523; Wesson v. County of Saline, 34 U. S. App. 680, 20 C. C. A. 227, and 73 Fed. 917; Post's Adm'r v. County of Hamilton, 46 U. S. App. 260, 22 C. C. A. 128, and 76 Fed. 208; Daube v. Iron Co., 46 U. S. App. 591, 23 C. C. A. 420, and 77 Fed. 713.

The assignment of errors contains many specifications which, under the rules applicable to trials in cases at law without a jury, are unavailing. They are to the effect that the court erred in making no finding of facts which evidence admitted tended to prove, in refusing to make findings requested by the plaintiff in error, in refusing to modify the findings made in certain particulars as requested, in finding matters of evidence, and in that certain findings

are defective or do not state the whole fact. The statutory rule is that, when the court makes a special finding, "rulings of the court in the progress of the trial" may be reviewed, and "the review may extend to the determination of the sufficiency of the facts found to support the judgment." Rev. St. § 700. The only recognized exception to the rule is that in a trial by the court, just as when the trial is by jury, a party may insist upon a finding in his favor on the ground that there is a total lack of evidence to support a contrary finding, or, if he have the burden of the issue, on the ground that the evidence in his favor is adequate, unimpeached, and without conflict or uncertainty. Whether the court shall have chosen to make a general or a special finding, if in any case there is a total lack of evidence upon an essential point, or if the evidence upon the entire case or upon a controlling point is adequate, unambiguous, and without conflict, a peremptory motion by the party entitled to prevail, if made, should be sustained, and an adverse ruling, if the exception be saved, may be reviewed; but properly the motion should be made before the finding is announced, or at least before the entry thereof of record. If made later and sustained, the result probably would be a new trial, and not a new finding in favor of the moving party. Treated as a motion for a new trial, the ruling upon it would be a matter of discretion, which could not be reviewed. If satisfactory proof be made, without evidence to the contrary, of a controlling fact which is not embraced in a special finding or special verdict, the remedy is to be sought by a motion for a venire de novo. In this case no motion was made for a finding in favor of the plaintiff in error on the ground of lack of evidence to sustain a finding for the plaintiff, or on the ground of lack of evidence of a particular fact, without which a finding for the plaintiff could not stand; and if there was adequate evidence, without conflict, of any fact which the court did not include in its finding, the fact was evidentiary only, or, to say the least, if found would not have been controlling of the other facts as found.

The first, second, third and fourth specifications of error relate to rulings of the court during the progress of the trial, and must be considered. The dominant question in the case, evidently, is whether the assignment of the note and mortgage was delivered, or, to follow more closely the words of the finding, delivered to James T. Greene to be held for the plaintiff. As bearing on that question, it was important to determine whether, when the instrument was placed in his possession, Greene was Mrs. Farnsworth's agent, and, if so, what was the scope of his agency. On that point Haber, the original defendant in the case, called as a witness for the defense, had testified to the effect that Mrs. Farnsworth had a property of about $14,000, and that nearly all her business was intrusted to Greene. On cross-examination the witness was asked if he had not claimed that he was her agent and transacted her business, and, having answered "No," was shown a letter, the writing of which he admitted, and with reference to a particular passage, which alone he was allowed to read, was asked, "In that letter did you not state that she (meaning Ophelia Farnsworth) wanted to make you the residuary

legatee in her will as you had handled her property and had never charged her a cent"? to which he answered, "Yes, sir." Thereupon counsel for the defendant asked for the letter. Opposing counsel replied that he could have "that part, but not any more," and upon the court's saying, "You are entitled to read that portion which is in connection with that sentence," counsel for the defendant excepted to the ruling, and asked that the letter be submitted to the court for inspection. Counsel for the plaintiff then said to the witness: "I ask the question, did you write so and so? If you have any explanation to make, of course you can make it;" to which the witness responded: "That clause is very misleading; without the entire letter." Following this, the bill of exceptions reads:

"Defendant's Counsel: We ask an order from the court directing him to be compelled to turn it over. (Letter handed to court.) Court: I do not find anything in the letter; that is, any portion that I have looked at— Defendant's Counsel (Mr. Cash): If Gen. Bragg is so technical that he is going to insist that we look only at a little portion, I think we are entitled to have all the testimony stricken out he has asked upon this subject. Court: This inquiry is not directed to the use of this letter in any form as evidence. It is simply as a question would be asked of the witness, whether he had said to John or wrote him so and so. That is the end of the inquiry, so far as impeaching testimony is concerned. The witness admits the fact of the statement, whatever it may be worth, but the letter which they have in their hands I think you are not entitled to have produced as a whole. You can examine that portion of it on which he made the inquiry. (Defendant excepts.) Gen. Bragg: That is the only thing connected with it. Court: They have a right to examine that portion of the letter. Counsel for defendant declines to look at that portion."

Our opinion is that the ruling was erroneous. If the witness had been asked if, in a certain conversation, he had not said so and so, and had answered "Yes," it would have been competent to inquire whether in the same conversation he said something further, by which what had been admitted would be qualified or retracted; and, on the same ground of reasonableness, when the witness admitted the presence in a letter that he had written of a statement which, alone and unexplained by other parts of the letter, was in conflict with his testimony, it was the privilege of counsel of the party in whose behalf the witness had testified to inspect the letter for other statements affecting the meaning of the expression admitted, whether to be found in the immediate context or in other parts of the letter. No statement by counsel in possession of the letter concerning the relevancy of other parts should be allowed to prevent the inspection. If the witness had denied or had not admitted the part of the letter shown, he could not have been examined concerning the contents of the letter, nor could opposite counsel in that case have been entitled to look at the paper. Greenl. Ev. §§ 88, 463; 1 Phil. Ev. pp. *575, *576. It cannot be said that the testimony or the credibility of the witness in this respect is in itself immaterial, or is made so by other findings unaffected thereby. The case is in a narrow compass, turning upon the question whether the assignment was delivered, and that depending finally upon the more narrow question whether it was delivered to Greene to be held for the plaintiff. Upon that question the recording can have no bearing, because not done until after Mrs. Farnsworth's death. There

is no proof from subscribing witnesses or others of the circumstances attendant upon the execution of the instrument. It bears the notarial certificate, in proper form, that the signer acknowledged "the execution," but that in itself means that the signing and sealing in the form shown were acknowledged. The assignee was not present, nor any one chosen by him to represent him. The attestation is simply in the words, "In the presence of," before the names of the witnesses. The words "Signed, sealed, and delivered," and any equivalent, are wanting, and, if present, could only indicate an intention to deliver. The instrument was in the maker's possession when she signed it. Then it went into the hands of Greene, in order to enable him to put upon it his certificate and signature to the acknowledgment of execution. Whether it went again into the physical possession of Mrs. Farnsworth after completion, and then passed again from her to Greene, and for what purpose, or whether it remained in his possession from the time of acknowledgment, and whether accidentally or intentionally, and, if intentionally, for what purpose, no witness has said, or probably can say. Of course, if it were conclusively established that at that or another time the assignment was delivered to Greene for the plaintiff, no subsequent act or declaration of Mrs. Farnsworth or of Greene could be allowed to thwart the plaintiff's right; but, when the question is whether a delivery was intended, the act or fact supposed to constitute or show delivery cannot have the effect of excluding other evidence on the question. But for the subsequent conduct of Mrs. Farnsworth, it would be a matter of inference, and on grounds not strong or clear, that she knew that the assignment remained or had gotten into the possession of Greene. In her will she gave the note and mortgage to her niece, the plaintiff in error, and added the clause, "Any indorsement or assignment of said note is hereby canceled and revoked." She therefore had knowledge of an assignment in some form having been made, unless, as urged by the plaintiff in error, her faculties at that time were so far impaired that she was without testamentary capacity. The evidence shows beyond doubt that Greene acted to some extent as agent for Mrs. Farnsworth. He held possession of her notes, and collected or received interest on them (this note in controversy, with others), after the assignment was made, and sent money to her, including probably the interest received on this note. He kept her papers together in a box,—this note and mortgage and the assignment by themselves in an unsealed envelope; the others, "in their own envelopes." It is said by counsel for the plaintiff in error that in that box the papers of Mrs. Farnsworth only were kept, but, if that is more than an inference, we have not found the testimony. The memorandum on the envelope in which the assignment was kept was admitted in evidence without objection. Whether it was otherwise competent, we are not called upon to decide. It shows or tends to show Greene's understanding of the character and purpose of his possession. Whether it is in harmony with the court's finding, we do not decide. The difference of expression is manifest. Stress has been laid upon the recital in the assignment of a consideration of $5,000, but there is evidence in the case which, though circumstantial, leaves little or

no doubt that there was no consideration whatever, outside of a suggested promise of Mrs. Farnsworth to her deceased husband.    In this state of the evidence, it is impossible to say that the error committed was a harmless one.    The judgment is reversed, with direction to grant a new trial.